UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WENDY RYE,                                       CIVIL NO. 06-3288 (RHK/JSM)

    Plaintiff,

v.                                               <u>REPORT AND RECOMMENDATION</u>

MATRIXX INITIATIVES, INC., et al.

    Defendants.

JANIE S. MAYERON, United States Magistrate Judge

    The above matter came on before the undersigned upon defendants' motion for summary judgment [Docket No. 60]. Plaintiff did not file a response, and consequently, no hearing on the motion was held by the Court and defendants' motion is decided on the papers. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

    For the reasons discussed below, IT IS RECOMMENDED THAT:

    1.     Defendants' Motion for Summary Judgment [Docket No. 60] be **GRANTED**; and

    2.     Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

**I.**     **FACTUAL BACKGROUND**

    This case arises out of plaintiff Wendy Rye's claim that she was injured by her use of Zicam Cold Remedy Nasal Gel ("Zicam"). Complaint, ¶ 10 [Docket No. 46, Att.

2]. Plaintiff contends that Zicam was defective and unreasonably safe when being used in a foreseeable manner, and that defendants negligently designed, manufactured, sold and distributed the product. Complaint, ¶¶ 14, 17. Plaintiff also claims that defendants negligently failed to provide sufficient warning for use of Zicam, and that defendants are liable for her injuries based upon breach of warranty and breach of contract. Complaint, ¶¶ 20, 23.

Plaintiff's suit originated in the U.S. District Court for the Northern District of Alabama on November 1, 2005. Counsel for plaintiff withdrew from the case on June 30, 2006. [Docket No. 46, Att. 50]. Counsel for plaintiff notified plaintiff, via certified mail, of the Court's Order permitting the withdrawal of counsel. [Docket No. 46, Att. 55]. On July 21, 2006, pursuant to defendants' motion to transfer venue, the case was transferred to this Court. [Docket No. 46, Att. 54].

On February 21, 2007, defendants filed the instant motion for summary judgment, and the Court set the hearing on the motion for April 12, 2007. On March 15, 2007, the Court entered an Order directing plaintiff to respond to defendants' motion on or before April 5, 2007, and informing plaintiff that the Court would consider granting defendants' motion if plaintiff failed to adhere to the deadline. [Docket No. 67]. Plaintiff has never filed a response to defendants' motion, nor has she contacted the Court regarding the motion.

In her responses to defendants' first set of interrogatories, plaintiff stated that in May of 2003, she had a cold that was not getting better. Cialkowski Aff., Ex. B, p. 8 [Docket No. 63-3]. In June of 2003, plaintiff purchased Zicam Nasal Swabs, and used four to five swabs two to three times per day for about four days. Id. It burned when

2

she used it, and she had no smell or taste after using the product. Id. Zicam did not reduce the duration of her cold or severity of its symptoms. Id.

With respect to defendants' Interrogatory No. 17 seeking to learn the opinions of any expert witnesses that plaintiff would offer, plaintiff provided the following response:

> Plaintiff objects to Interrogatory 17 because it seeks privileged information protected by the attorney work-product doctrine. The information sought constitutes the mental impressions, conclusions, legal theories, and/or opinions of plaintiff's counsel. The expert witnesses plaintiff intends to use in this case will be provided to the defendants in accordance with the Court's pre-trial and scheduling orders.

Id. at p. 10.

In response to Interrogatory Nos. 21[1] and 22[2], where defendants sought to discover the factual basis for plaintiff's various claims, plaintiff's response to both interrogatories stated:

> Plaintiff objects to [Interrogatories 21 and 22] because it seeks information protected by the attorney-client privilege and the attorney work-product privilege. Additionally, the information sought constitutes the mental impressions, conclusions, opinions, and/or legal theories of plaintiff's counsel. Please refer to the complaint.

Id. Plaintiff did not supplement these responses.

---

[1] Interrogatory No. 21: "Set forth in full and complete detail each such defect which you contend existed in the Product, identify all other reasonable alternative designs that you contend existed and what you contend the warning on the Product should have stated, state precisely and with particularity all facts and information upon which you rely to support the contention, identify each person firm or corporation who has knowledge of such facts or information, and identify each document relating to or containing such facts or information." Cialkowski Aff., Ex. B, p. 11.

[2] Interrogatory No. 22: "With respect to your breach of warranty claims in Count Five of Plaintiff's Complaint, identify to whom, by whom and when the warranty was made, whether the warranty was oral or in writing, what it stated and state precisely and with particularity all facts or information upon which you rely to support the contention, identify each person, firm or corporation who has knowledge of such facts or information, and identify each document relating to or constituting the alleged warranty." Cialkowski Aff., Ex. B, p. 11.

Similarly, defendants' first request for production of documents contained requests for documents bearing on plaintiff's expert witnesses' opinions and facts plaintiff was relying upon to support each of her claims. See Plaintiff's Responses to Defendants' First Requests for Production of Documents 1, 3, 4, 7, 19, 20, 21, 32, 33, 34, 35 and 37. Cialkowski Aff., Ex. D [Docket No. 63-4]. To each of defendants' requests, plaintiff responded with the following:

> Plaintiff objects to this request on the basis that the information sought is privileged, confidential, prepared in anticipation of litigation and constitutes attorney work product. No decision has been made at this time as to whether any expert or experts will testify at the trial of this case. Plaintiff reserves the right to supplement this response pursuant to any Scheduling Orders from the Court that govern experts.

Id. Plaintiff has not supplemented her responses to defendants' document requests. Plaintiff has also not provided any further information regarding expert testimony, or any further specificity regarding the nature of her claim.

Defendants scheduled plaintiff's deposition for December 21, 2006, which was noticed by Certified Mail on December 13, 2006. See Cialkowski Aff., Ex. E. Plaintiff signed the Certified Mail receipt on December 15, 2006. Cialkowski Aff., Ex. F. Plaintiff did not appear for the deposition, nor did she contact counsel for defendants or the Court to request rescheduling.

In addition to plaintiff's refusal to respond to defendants' discovery or provide any expert opinion to support her claims that Zicam caused her injuries, defendants submitted the following evidence to the Court to support their defense that plaintiff's loss of taste and smell was due to causes other than Zicam.

On May 8, 2003, plaintiff was seen at the Divine Providence Minneota Clinic for complaints of cough, sore throat and chest congestion. Cialkowski Aff., Ex. G. She

was diagnosed with bronchitis and prescribed ZPack (Zithromax). Id. On June 4, 2003, plaintiff returned to the clinic, complaining that she had not had any sense of taste or smell since the fourth day of taking the Z-Pack. Id. The staff notes from the June 4, 2003 visit stated that the only new medication plaintiff was taking when she lost her sense of taste and smell was the Z-Pack. Id.

On June 26, 2003, plaintiff went to the Ear, Nose & Throat Clinic in Sioux Falls, South Dakota complaining of loss of smell and taste. The recommendation of the treating physician stated that the most likely etiology of her condition was viral, and given her complete absence of taste and smell, the most likely cause was viral. Cialkowski Aff., Ex. D, p. 14.

On July 22, 2003, plaintiff visited the Setliff Clinic in Sioux Falls, South Dakota, with the same complaints. Id. at 13. The medical notes from that visit state that "the most likely explanation for her difficulty is a viral neuritis with secondary anosmia and loss of taste secondary to that." Id. Dr. Setliff advised plaintiff that "most likely her difficulty is related to a viral etiology…" Id.

## II.    STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules

as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N.D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

Summary judgment is appropriate where the material facts are not in dispute, and the court need only apply the law to the facts in the record. See Eisenrich v. Minneapolis Retail Meat Cutters, 282 F. Supp. 1077, 1080-81 (D. Minn. 2003) (citing Oldham v. West, 47 F. 3d 985, 988 (8th Cir. 1995)).

6

**III.     DISCUSSION**

Plaintiff's claims are based on theories of product liability, i.e. defective design, manufacture, sale or distribution; failure to warn; and breach of warranty and contract.

Defendants argue that plaintiff has failed to provide evidence of a defect in the Zicam product, or that the alleged defect cause her injuries. Further, defendants contend that because plaintiff has provided no expert testimony, she cannot prove that a product defect caused her injury and therefore defendants are entitled to summary judgment.

In Minnesota, to establish a prima facie case of product liability, a plaintiff must demonstrate that (1) the product was in a defective condition unreasonably dangerous for its intended use, (2) the defect existed when the product left the manufacturer's control, and (3) the defect proximately caused the plaintiff's injuries. Patton v. Newmar Corp., 538 N.W.2d 116, 119 (Minn. 1995) (citing Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 623 n. 3 (Minn. 1984) (citations omitted). "Claims of negligence and breach of warranty also include the causation element." Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1060 (8th Cir. 2005) (citing Myers v. Hearth Techs., Inc., 621 N.W.2d 787, 792 (Minn.Ct.App. 2001); Alley Constr. Co. v. State, 300 Minn. 346, 219 N.W.2d 922, 925 n. 1 (1974)).

"Under Minnesota law, expert testimony is required to prove causation in cases involving complex medical issues with which a jury is unlikely to have experience." Johnson v. Zimmer, Inc., 2004 WL 742038 at *6 (D.Minn.) (citing Willert v. Ortho Pharmaceutical Corp., 995 F.Supp. 979, 983 (D.Minn. 1998)). See also Mozes v. Medtronic, Inc., 14 F.Supp.2d 1124, 1128 (D.Minn. 1998) (pacemaker products liability

7

case involved issues of a complex nature and plaintiff was required to prove his defective product claims with expert testimony). Expert testimony is necessary in personal injury cases "involving pharmaceuticals, toxins or medical devices [because they involve] complex questions of medical causation beyond the understanding of a lay person." In re Baycol Products Litigation, 321 F.Supp.2d 1118, 1126 (D.Minn. 2004) (citations omitted). Because a pharmaceutical is at issue in this case, plaintiff is required to present expert testimony to prove defect and causation. Plaintiff has not identified any experts or expert testimony that she will be relying upon in her case. Furthermore, the pretrial scheduling order governing this case required plaintiff to disclose her expert witnesses by January 10, 2007. Without expert testimony, plaintiff is unable to prove that the Zicam was defective, and that her usage of Zicam was the proximate cause of her loss of smell and taste. See Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1009 (8th Cir. 1998) (holding that where the only evidence plaintiff offered of product's defective condition under Minnesota law was expert testimony that the district court excluded, summary judgment was appropriate).

Furthermore, plaintiff's complaint and her answers to defendants' discovery contain no support for her allegation that the Zicam was defective, and lack any evidence that the allegedly defective Zicam caused her loss of smell and taste. In fact, plaintiff's medical records from two different clinics indicated that the cause of her loss of smell and taste was most likely viral. The medical records from the Divine Providence Minneota Clinic also indicated that the loss of smell and taste occurred four days after plaintiff began taking the Z-Pack, that the Z-Pack was the only new medication, and the records make no mention plaintiff's usage of the Zicam at all.

Plaintiff's record from the Ear, Nose & Throat Clinic further stated that plaintiff "noted that she had bronchitis in the beginning of May and then shortly thereafter being on Zithromax, lost her sense of smell and taste completely." Cialkowski Aff., Ex. D, p. 14. According to plaintiff, she did not begin taking the Zicam until June of 2003. Cialkowski Aff., Ex. B., (Pl. Response to Interrogatory No. 12). While plaintiff stated that she had no smell or taste after using the Zicam, she did not state whether her senses of smell and taste were functional before she used the product. Id. However, none of plaintiff's medical records address plaintiff's usage of Zicam, or list it as a medicine used by plaintiff. Plaintiff has provided no support for her allegations that the allegedly defective Zicam was the cause of her loss of taste and smell.

In summary, the undisputed facts establish that plaintiff was diagnosed with bronchitis in May of 2003, and was prescribed the Z-Pack. Four days after using the Z-Pack, plaintiff lost her sense of smell and taste. Two different doctors attributed plaintiff's loss of sense and smell to a viral condition. Plaintiff has presented no expert testimony to support her claim that Zicam was the cause of her loss of sense of smell or taste. Under these facts, plaintiff has not shown that the Zicam was defective, or that it was the cause of her injuries. As such, plaintiff's claims fail as a matter of law, and summary judgment is proper in this case. See Fireman's Fund Ins. Co., 394 F.3d at 1061 (where plaintiff presented no evidence that product was defective and therefore could not prove that a defect in the product was the proximate cause of the injury, summary judgment for defendant was proper). The Court recommends that defendants' motion for summary judgment be granted.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1. Defendants' Motion for Summary Judgment [Docket No. 60] be GRANTED; and

2. Plaintiff's Complaint be DISMISSED WITH PREJUDICE.


Dated: July 30, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 16, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.